UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CV-695-BR

| | | |
|---|---|---|
| THIMBLER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNIQUE SOLUTIONS DESIGN, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the following motions: (1) the 11 January 2013 motion to dismiss (DE # 11) filed by defendant Unique Solutions Design, Ltd. ("Unique Canada"); (2) the 21 February 2013 motion to conduct jurisdictional discovery (DE # 14) filed by plaintiff Thimbler, Inc. ("Thimbler"); (3) Unique Canada's 29 May 2013 motion to strike (DE # 21); and (4) Thimbler's 3 July 2013 motion to amend the complaint (DE # 22). The period to respond and reply to these motions has elapsed, and the matters are now ripe for disposition.

## I. BACKGROUND

Thimbler is a North Carolina corporation. (Compl., DE # 1, ¶ 1.) Unique Canada is a foreign corporation having its office and principal place of business in Halifax, Nova Scotia. (Id. ¶ 2.) Thimbler alleges that it entered into a contract with Unique Canada on 16 December 2010, pursuant to which Thimbler would manufacture Intellifit 3D body scanners ("scanners") in China and provide them to Unique Canada for a price not to exceed $12,000 per unit. (Id. ¶ 5 & Ex. 1, DE # 1-1.) The contract contains a choice of law provision stating that the law of Nova Scotia shall apply. (Id.) Pursuant to the agreement, Thimbler has produced and delivered ninety-seven scanners to Unique Canada. (Compl., DE # 1, ¶ 6.) As a result, Thimbler alleges

that Unique Canada became indebted to Thimbler in the amount of $456,219.46. (Id. ¶ 7.) Despite demand from Thimbler, Unique Canada has failed to pay Thimbler the aforesaid amount. (Id. ¶ 8.) Because Unique Canada has failed to make payment, Thimbler is presently storing thirteen additional scanners to be shipped. (Id. ¶ 6.)

Thimbler commenced this action on 22 October 2012. It seeks a judgment in the amount of $456,219.46, interest, and expenses for the transportation and storage of the unshipped scanners. (Id. at 2, Prayer for Relief.) On 11 January 2013, Unique Canada filed a motion to dismiss the complaint for lack of personal jurisdiction. (DE # 11.) On 21 February 2013, Thimbler filed a response to the motion to dismiss and also filed a motion to conduct jurisdictional discovery. (DE ## 14-15.) On 25 March 2013, Unique Canada filed a single document containing its reply to the motion to dismiss and its response to the motion for jurisdictional discovery. (DE # 18.)

On 16 May 2013, Thimbler filed an amended complaint. (DE # 19.) On 29 May 2013, Unique Canada filed a motion to strike the amended complaint. (DE # 21.) Thimbler did not respond to the motion to strike. On 3 July 2013, Thimbler filed a motion to amend the complaint. (DE # 22.) Unique Canada filed a response on 7 August 2013. (DE # 26.) Thimbler did not file a reply.

## II. DISCUSSION

A. <u>Unique Canada's Motion to Strike</u>

Thimbler initially filed its amended complaint on 16 May 2013. (DE # 19.) On 29 May 2013, Unique Canada filed a motion to strike the amended complaint, arguing that Thimbler did not seek leave of the court or Unique Canada's consent before filing that complaint. (DE # 21.)

2

Thimbler subsequently filed a formal motion to amend the complaint, to which Unique Canada responded. (DE ## 22, 26.) Because Unique Canada has now been afforded a proper opportunity to oppose the amended complaint and because the court has determined that Thimbler may amend its complaint to add a quantum meruit claim against Unique USA, see discussion, infra, at 10-12, the motion to strike the amended complaint will be denied as moot.

B.  Thimbler's Motion to Amend the Complaint

The court next addresses Thimbler's motion to amend the complaint. In the amended complaint (DE # 19), Thimbler seeks to amend the breach of contract claim[1] asserted against Unique Canada in the original complaint by adding factual allegations. Thimbler also moves to amend the complaint in order to add Unique Canada's subsidiary, Unique Solutions Design USA, Ltd. ("Unique USA"), as a defendant to this lawsuit and to add two new causes of action.

Federal Rule of Civil Procedure 15 instructs that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). Thus, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Id. (citation and internal quotation marks omitted); see also Foman v. Davis, 371 U.S. 178, 182 (1962). An amendment is futile if it cannot withstand a motion to dismiss. See Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995).

---

[1] Although Thimbler does not actually use the words "breach of contract" in the original complaint, it is nonetheless clear that the gravamen of that complaint is a breach of contract dispute. Furthermore, Thimbler has specifically labeled the claim as one for breach of contract in its amended complaint. (Am. Compl., DE # 19, at 5.)

3

1. Breach of contract claim and Unique Canada's motion to dismiss

Thimbler's first cause of action in the amended complaint is a revised version of the same breach of contract claim contained in the original complaint. (Am. Compl., DE # 19, ¶¶ 33-39.) Unique Canada filed a motion to dismiss the original breach of contract claim pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (DE # 11.) Thimbler opposed that motion directly (DE ## 15-16) but then subsequently filed a motion to amend the complaint (DE # 22). Unique Canada argues that while the amended complaint now incorporates allegations that Thimbler made in its memorandum in opposition to Unique Canada's motion to dismiss (see DE ## 15-16), it does not add any new fact or allegation that would alter the jurisdictional analysis and does not cure the jurisdictional defects asserted in the motion to dismiss. Thus, Unique Canada maintains that its motion to dismiss should be granted and that Thimbler's motion to amend the complaint should be denied as futile with respect to the breach of contract claim.

In this case, Thimbler has the burden of establishing personal jurisdiction by a preponderance of the evidence. See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003); In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997). In determining whether personal jurisdiction exists, the court may consider evidence outside the pleadings, such as affidavits and other evidentiary materials. See IHFC Props., LLC v. APA Mktg., Inc., 850 F. Supp. 2d 604, 616 (M.D.N.C. 2012); Med-Therapy Rehab. Servs., Inc. v. Diversicare Corp. of Am., 768 F. Supp. 513, 516 (W.D.N.C. 1991) (citing Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)). Generally, when a district court decides the issue of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only

4

make a prima facie showing of personal jurisdiction, and the court is to construe the pleadings, affidavits, and other supporting documents in the light most favorable to plaintiff by assuming credibility and drawing all inferences and resolving all factual disputes in the plaintiff's favor. See Masselli & Lane, PC v. Miller & Schuh, PA, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000); Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

Unique Canada is a foreign corporation having its office and principal place of business in Halifax, Nova Scotia. In order for a district court to exercise personal jurisdiction over a non-resident defendant such as Unique Canada, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized by the forum state's long-arm statute; and (2) such exercise must also comport with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Christian Sci. Bd. of Dirs. of First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4, extends its reach to the outer limits of due process. Id. Thus, the court's inquiry collapses into a determination of whether asserting personal jurisdiction is permissible under the Due Process Clause. Id.; see also, e.g., Hanes Cos., Inc. v. Ronson, 712 F. Supp. 1223, 1226 (M.D.N.C. 1988).

Under the Due Process Clause, personal jurisdiction over Unique Canada is proper only if (1) Unique Canada has purposefully established "minimum contacts" with North Carolina; and (2) the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-

5

78 (1985). The "minimum contacts" required by due process differ depending on whether "specific" or "general" personal jurisdiction is asserted. Specific jurisdiction exists when the lawsuit arises out of the defendant's contacts with the forum state. General jurisdiction exists when the lawsuit does not arise out of the defendant's activities in the forum state, but rather the defendant had continuous and systematic contacts with the forum. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984); ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 623-24 (4th Cir. 1997); Tubular Textile Mach. & Compax Corp. v. Formosa Dyeing & Finishing, Inc., No. 4:96CV00391, 1997 WL 33150812, at *4 (M.D.N.C. Jan. 29, 1997). In this case, Thimbler does not argue that this court has general jurisdiction over Unique Canada. (See Pl.'s Mem. Opp'n Mot. Dismiss, DE # 15, at 5.) Thus, the court will limit its discussion to specific jurisdiction.

The exercise of specific personal jurisdiction focuses on the relationship between the defendant, the forum, and the litigation. See Shaffer v. Heitner, 433 U.S. 186, 204 (1977). To determine the existence of specific jurisdiction, a court considers: "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (first alteration in original) (citation omitted); see also Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009); Carefirst of Md., Inc., 334 F.3d at 397.

The first of these three prongs articulates the minimum contacts requirement of constitutional due process that a defendant purposefully avail himself of the privilege of

6

conducting business under the laws of the forum state. Consulting Eng'rs Corp., 561 F.3d at 278. The aim of the minimum contacts requirement is that a non-resident defendant's conduct is such that he should reasonably anticipate being haled into the courts of the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). "[T]he mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." Id. at 298 (citation and internal quotation marks omitted). In addition, a contract between an out-of-state party and a North Carolina resident does not automatically establish minimum contacts; rather, the contract must have a substantial connection with North Carolina to form the basis of personal jurisdiction. See, e.g., CFA Med., Inc. v. Burkhalter, 383 S.E.2d 214, 216 (N.C. Ct. App. 1989).

Courts have considered various nonexclusive factors in the business context to determine whether a defendant purposefully availed itself of the privilege of conducting activities in the forum state. See Consulting Eng'rs Corp., 561 F.3d at 278. These factors include, but are not limited to: (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality, and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum. Id.

Here, Unique Canada does not own property in North Carolina. (T. Shaw Decl., DE # 18-1, ¶ 6.) In addition, Unique Canada did not initiate the contract negotiations with Thimbler. (Id. ¶ 2.) Rather, Thimbler's President, Charles Tse ("Tse"), reached out to Unique Canada to set up an in-person meeting in Halifax, Nova Scotia. (Id.) See CFA Med., Inc., 383 S.E.2d at 216 ("Which party initiates the contact is taken to be a critical factor in assessing whether a non-resident defendant has made 'purposeful availment.'"). Moreover, according to the terms of the contract, the scanners were to be manufactured by Thimbler not in the forum state, but in China. (Contract, DE # 1-1, ¶ 1; I. Wilkie Decl., DE # 11-1, ¶ 5.) The parties also expressly chose the law of Nova Scotia to govern the contract. (Contract, DE # 1-1, ¶ 32; I. Wilkie Decl., DE # 11-1, ¶ 5.) See Tejal Vyas, LLC v. Carriage Park, Ltd. P'ship, 600 S.E.2d 881, 887 (N.C. Ct. App. 2004) ("While choice of law clauses are not determinative of personal jurisdiction, they express the intention of the parties and are a factor in determining whether minimum contacts exist and due process was met."), aff'd 608 S.E.2d 751 (N.C. 2005) (per curiam). All of these factors demonstrate that Unique Canada has not purposefully availed itself of the privilege of conducting activities in North Carolina.

Thimbler argues that representatives and employees of Unique Canada called Tse at his Raleigh, North Carolina location and occasionally sent mail and parts to his Raleigh address. (Pl.'s Mem. Opp'n Mot. Dismiss, DE # 15, at 3; Am. Compl., DE # 19, ¶ 23.) As Thimbler does not specify the number of phone calls between Unique Canada and Tse and also does not provide any elaboration on how the correspondences related to Thimbler's claim against Unique Canada, this factor is insufficient to establish personal jurisdiction. See, e.g., Consulting Eng'rs Corp., 561 F.3d at 279 n.5 ("[T]he mere fact that emails, telephone calls, and faxes were employed does

not, of itself, alter the minimum contacts analysis. The analysis must focus on the nature, quality, and quantity of the contacts, as well as their relation to the forum state."). In addition, Unique Canada's occasional mailing of items to Tse in North Carolina is not a basis for establishing personal jurisdiction because the mailings were not provided for in the contract, and they occurred only because Tse was in North Carolina rather than in China at the time of the shipment. (See Contract, DE # 1-1; J. Gould-Thorpe Decl., DE # 11-2, ¶ 4.)

Thimbler also heavily emphasizes the fact that scanners produced by Thimbler have been installed in North Carolina locations either by Unique Canada or by its subsidiary Unique USA and that Tse personally viewed the scanners in the North Carolina locations and interviewed the operators of those scanners. (See, e.g., Pl.'s Mem. Opp'n Mot. Dismiss, DE # 15, at 2-6; Am. Compl., DE # 19, ¶¶ 7, 9-11, 17-21.) In arguing that these facts establish minimum contacts, Thimbler relies upon the "stream of commerce" doctrine recently discussed by the Supreme Court in J. McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780 (2011). (See Pl.'s Mem. Opp'n Mot. Dismiss, DE # 15, at 5.) The Supreme Court has stated that "placing goods into the stream of commerce 'with the expectation that they will be purchased by consumers within the forum State' may indicate purposeful availment" of that state's laws and that personal jurisdiction over a non-resident defendant is appropriate "where the defendant can be said to have targeted the forum" with its goods. Id. at 2788 (plurality) (quoting World-Wide Volkswagen Corp., 444 U.S. at 298).

Regardless of whether the scanners were placed in North Carolina by Unique Canada or by Unique USA, the court sees no similarity between this case and "stream of commerce" cases, which usually arise in the products liability context. This is not a case of a corporation placing

9

its products into the stream of commerce to be purchased by general consumers. Moreover, Thimbler is not before the court because of any personal injury caused by the placement or use of the scanners in North Carolina. Rather, this is a case where Thimbler is asserting the existence of a bargained-for contract between it and Unique Canada, and any injury is directly attributable to the failure to comply with that alleged contract. Any duty that may have been breached by Unique Canada was a duty arising out of the purported contract, which does not have a substantial connection to North Carolina. The court further notes that the contract does not contemplate the placement of the scanners following their manufacture in China and their delivery to Unique Canada. (Contract, DE # 1-1.) As a result, the stream of commerce doctrine is inapplicable here. For the same reasons and contrary to Thimbler's assertions (see Pl.'s Mem. Opp'n Mot. Dismiss, DE # 15, at 6), this action cannot be said to arise out of Unique Canada's contacts with the forum state.

After considering and weighing the evidence in the record, the court concludes that exercising specific personal jurisdiction over Unique Canada would violate the Due Process Clause. Because the court lacks personal jurisdiction over Unique Canada with respect to the breach of contract claim, Thimbler's motion to amend that claim must be denied as futile, and Unique Canada's motion to dismiss will be granted.

    2. Quantum meruit claim

The second cause of action in the amended complaint is brought against Unique USA, whom Thimbler now seeks to add as a defendant to this lawsuit. Thimbler alleges that Unique USA is a wholly-owned subsidiary of Unique Canada. (Am. Compl., DE # 19, ¶ 7.) The amended complaint asserts a quantum meruit claim against Unique USA based on its alleged

receipt of scanners from Unique Canada and on its failure to pay adequate consideration for the scanners. (Id. ¶¶ 40-45.)

Quantum meruit serves as an equitable remedy to prevent unjust enrichment when there is no express contract. Whitfield v. Gilchrist, 497 S.E.2d 412, 414-15 (N.C. 1998). To recover in quantum meruit, a plaintiff must show that (1) services were rendered to the defendant; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously. Scott v. United Carolina Bank, 503 S.E.2d 149, 152 (N.C. Ct. App. 1998), disc. rev. denied, 528 S.E.2d 584 (N.C. 1999). "Quantum meruit claims require a showing that both parties understood that services were rendered with the expectation of payment." Id. The measure of recovery under quantum meruit is the reasonable value of the services provided. Whitfield, 497 S.E.2d at 414.

Unique Canada argues that Thimbler's quantum meruit claim against Unique USA should be deemed futile as a matter of law because it relates to amounts that Thimbler claims to be owed under an express contract. Unique Canada contends that recovery on an express contract theory precludes recovery in quantum meruit where both claims are based on the same subject matter. (See Def.'s Mem. Opp'n Pl.'s Mot. for Leave to File Am. Compl., DE # 26, at 5-6.)

This argument is plainly premature. Rule 8(d) of the Federal Rules of Civil Procedure explicitly permits a party to make alternate and inconsistent claims.[2] At the pleading stage,

---

[2] Although Thimbler's quantum meruit claim is not pled in the alternative to its breach of contract claim, the court has a duty to construe the complaint liberally and will therefore deem quantum meruit to be an alternative theory of Thimbler moving forward. See, e.g., TSC Research, LLC v. Bayer Chems. Corp., 552 F. Supp. 2d. 534, 540 (M.D.N.C. 2008) (plaintiff asserting claims for breach of contract and quantum meruit was not required to use any specific words to indicate that it was pleading claims in the alternative).

11

Thimbler is not required to guess whether it will be successful on its contract claim or its quasi-contract claim.  See, e.g., River's Edge Pharms., LLC v. Gorbec Pharms. Servs., Inc., No. 1:10CV991, 2012 WL 1439133, at *19 (M.D.N.C. Apr. 25, 2012) ("While a party cannot recover under both a claim for breach of contract and a claim for unjust enrichment, a party may pursue alternative claims at the motion to dismiss stage of the litigation."); James River Equip., Inc. v. Mecklenburg Utils., Inc., 634 S.E.2d 557, 560 (N.C. Ct. App. 2006) ("It is well-established that '[l]iberal pleading rules permit pleading in the alternative,' and that [breach of express contract and quantum meruit] theories may be pursued in the complaint even if plaintiff may not ultimately be able to prevail on both." (first alteration in original) (citation omitted)), appeal dismissed and disc. rev. denied, 644 S.E.2d 226 (N.C. 2007).  Furthermore, the quantum meruit claim is viable at this stage of the proceedings because the existence of an enforceable contract has not been conclusively established.[3]  See, e.g., Lewis v. Ceralvo Holdings, LLC, Civ. A. No. 4:11-CV-00055-JHM, 2012 WL 32607, at *6 (W.D. Ky. Jan. 6, 2012) (denying defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and allowing plaintiff to plead alternate claims of breach of contract and unjust enrichment where "at this early stage of litigation, it is unclear whether the contract is valid and enforceable").  As a result, Unique Canada has failed to show that Thimbler's quantum meruit claim against Unique USA is futile, and Thimbler's motion to amend the complaint will be granted with respect to this claim.

---

[3] The court notes that Unique Canada's potential defenses to Thimbler's breach of contract claim are unknown because it did not file an answer to the original complaint.  Instead, it chose to file a motion to dismiss for lack of personal jurisdiction.  See, e.g., Willow Run Foods Inc. v. New World Rest. Grp., No. 3:06-CV-0425, 2006 WL 1228853, at *1 (N.D.N.Y. May 4, 2006) (finding that it was premature to dismiss plaintiff's claim for unjust enrichment pursuant to Federal Rule of Civil Procedure 12(b)(6) where defendant had not submitted an answer admitting to the existence of a valid and enforceable contract).

### 3. Uniform Fraudulent Transfer Act claims

Thimbler's third cause of action in the amended complaint is brought against Unique Canada and Unique USA under North Carolina's Uniform Fraudulent Transfer Act ("UFTA"), N.C. Gen. Stat. § 39-23.1 *et seq.* The UFTA allows a creditor to bring a civil action against a debtor for certain transfers made by the debtor. N.C. Gen. Stat. § 39-23.7. In this case, Thimbler's UFTA claims are based on the alleged transfer of the scanners at issue from Unique Canada to Unique USA. Here, even if the court could assert personal jurisdiction over Unique Canada,[4] it would still deny the motion to amend as to this cause of action. The amendment is futile as to both defendants because it fails to state a claim upon which relief can be granted.

The sufficiency of a fraudulent transfer claim is judged in accordance with the notice pleading requirement of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Furthermore, allegations pertaining to actual fraud are subject to the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure, which requires that fraud be pled with particularity. See, e.g., Angell v. C.A. Perry &

---

[4] When specific jurisdiction is asserted, jurisdiction must be established for each claim alleged. See N.C. Mut. Life Ins. Co. v. McKinley Fin. Serv., Inc., 386 F. Supp. 2d 648, 656 (M.D.N.C. 2005) (citing Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir. 2004)); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.7 (3d ed. 2002) ("[I]t is important to remember that a plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts.").

13

Son, Inc. (In re Tanglewood Farms, Inc. of Elizabeth City), No. 12-00189-8-JRL, 2013 WL 1405757, at *6 (Bankr. E.D.N.C. Apr. 4, 2013).

Under the UFTA, a transfer is actually fraudulent if it is made with the intent to hinder, delay, or defraud a creditor of the debtor. N.C. Gen. Stat. § 39-23.4(a)(1). To set forth a claim for actual fraudulent transfer, Thimbler must state with specificity the factual circumstances constituting the alleged fraud. See Ivey v. First-Citizens Bank & Trust Co. (In re Whitley), No. 12-02028, 2013 WL 486782, at *13 (Bankr. M.D.N.C. Feb. 7, 2013). "Generally, to do this, the complaint must allege (1) the property subject to the transfer, (2) the timing and, if applicable, frequency of the transfers and (3) the consideration paid with respect thereto." Id. (stating this rule as applied to the Bankruptcy Code, and noting the "similar[ity] in form and substance," id. at *12, to North Carolina's fraudulent transfer statute at N.C. Gen. Stat. § 39-23.4(a)(1)).

Thimbler has not provided sufficient details regarding these elements. For example, the amended complaint does not identify the date of the transfer of the scanners or the relationship between the timing of the transfer and the date that Thimbler's claim arose. Overall, Thimbler has failed to inject any measure of substantiation into its allegations regarding the factual circumstances surrounding the fraud. See Angell v. Meherrin Agric. & Chem. Co. (In re Tanglewood Farms, Inc. of Elizabeth City), No. 12-00186-8-JRL, 2013 WL 1405729, at *9 (Bankr. E.D.N.C. Apr. 8, 2013) (plaintiff failed to allege UFTA claim with particularity under Federal Rule of Civil Procedure 9(b) where the complaint was "devoid of any description of the conduct constituting fraud").

Furthermore, Thimbler has failed to properly plead intent. The second sentence of Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be

14

alleged generally." Fed. R. Civ. P. 9(b). Accordingly, a plaintiff need not plead intent with the same particularity required of the circumstances constituting the alleged fraudulent conveyances. Nevertheless, in this case Thimbler's claim for actual fraudulent transfer under N.C. Gen. Stat. § 39-23.4(a)(1) consists of nothing more than the bare assertion that Unique Canada and Unique USA conducted a transfer of the scanners involved in this case "with the intent to hinder, delay or defraud Plaintiff[]." (Am. Compl., DE # 19, at 7 ¶ 51(a) (misnumbered as ¶ 40(a).) This does not state a plausible claim under Federal Rule of Civil Procedure 8(a)(2). See Oliver v. Cooper (In re Bateman), No. 11-00397-8-RDD, 2012 WL 1110080, at *3 (Bankr. E.D.N.C. Apr. 2, 2012) (plaintiff's conclusory allegation that "[t]he transfer of the Property was intended to hinder, delay, or defraud creditors" failed to set forth sufficient facts supporting the allegation of fraud under Federal Rule of Civil Procedure 8(a)). As a result, Thimbler's claim for actual fraudulent transfer is futile because it fails to state a claim upon which relief can be granted.

In addition, Thimbler has failed to state a claim for constructive fraudulent transfer. "Constructively fraudulent transfers, in contrast to those based on actual fraud, focus on the effect the transfer had on the debtor's financial condition without regard for the debtor's state of mind or intentions."[5] Callaway v. Cimarron Homeowners Ass'n, Inc. (In re Roszkowski), 494 B.R. 671, 678 (Bankr. E.D.N.C. 2013) (alteration, citation, and internal quotation marks omitted). To plead such a claim under N.C. Gen. Stat. § 39-23.4(a)(2), Thimbler must allege facts showing that Unique Canada was either engaged in a business transaction for which its

---

[5] Federal Rule of Civil Procedure 9(b), which requires the circumstances of fraud to be stated with particularity, is not applicable to claims of constructive fraudulent transfer. See Angell v. Augusta Seed Corp. (In re Tanglewood Farms, Inc. of Elizabeth City), No. 12-00192-8-JRL, 2013 WL 474704, at *3 (Bankr. E.D.N.C. Feb. 7, 2013) (citing Angell v. Ber Care, Inc. (In re Caremerica, Inc.), 409 B.R. 737, 755-56 (Bankr. E.D.N.C. 2009)); Beaman v. Barth (In re AmerLink, Ltd.), No. 10-00164-8-JRL, 2011 WL 1048848, at *3 (Bankr. E.D.N.C. Mar. 18, 2011).

15

remaining assets were unreasonably small in relation to the transaction or that Unique Canada knew debt incurred was beyond its ability to pay. See, e.g., Oliver (In re Bateman), 2012 WL 1110080, at *3. To plead a claim for constructive fraudulent transfer under N.C. Gen. Stat. § 39-23.5, Thimbler must allege facts showing that Unique Canada was insolvent at the time of the transfer or that Unique Canada became insolvent as a result of the transfer. See, e.g., Miller v. First Bank, 696 S.E.2d 824, 827 (N.C. Ct. App. 2010).

Here, Thimbler has failed to plead any facts regarding Unique Canada's financial condition. As an initial matter, it is important to note that Thimbler has not alleged the date of the transfer of the scanners, so there is no specified date on which to evaluate Unique Canada's solvency. Moreover, Thimbler has only made two conclusory allegations regarding the state of Unique Canada's finances. First, Thimbler has alleged that Unique Canada "believed that it would incur debts beyond its ability to pay as they became due." (Am. Compl., DE # 19, at 7 ¶ 51(b) (misnumbered as ¶ 40(b)).) This language is taken directly from N.C. Gen. Stat. § 39-23.4(a)(2)(b), but Thimbler has not included any facts which support this statement. The second allegation pertaining to this element states that "[u]pon information and belief, at the time of the transfer, [Unique Canada] was failing to pay creditors as its bills became due and was insolvent." (Id. ¶ 52 (misnumbered as ¶ 41).) Despite this assertion, Thimbler identifies no unpaid creditors other than itself.

The amended complaint contains absolutely no factual information to plausibly show that Unique Canada's liabilities exceeded its assets at the time of the transfer. Thus, Thimbler's allegations are simply not enough to demonstrate that the transfer of the scanners left Unique Canada undercapitalized or insolvent. See Oliver (In re Bateman), 2012 WL 1110080, at *3

16

(plaintiff's conclusory allegations that "[u]pon information and belief, the Debtor became insolvent as a result of the transfer of the Property" and that "debts were incurred beyond the Debtor's ability to pay as they became due" held insufficient to draw a reasonable inference that the debtor was insolvent on the date of the transfer or became insolvent shortly thereafter).

Finally, to adequately plead a violation of N.C. Gen. Stat. § 39-23.5, Thimbler must also allege that its claim arose before the transfer was made. See Miller, 696 S.E.2d at 827. Here, Thimbler has not made any allegations regarding the date of delivery of the scanners to Unique Canada, the date of the transfer of the scanners to Unique USA, or the date on which its claim arose. Thimbler has only alleged that Unique Canada transferred the scanners "directly" to Unique USA upon receipt from Thimbler. (Am. Compl., DE # 19, ¶ 29.) Thimbler has also not set forth the date or dates on which it allegedly satisfied its obligations under the contract, nor has it alleged when any payments were due under the contract. Its allegations consist of the bare conclusion that "Thimbler is a 'creditor' as defined by the [UFTA]." (Id. ¶ 50.) This self-serving statement is insufficient to allow the court to infer that Thimbler's claim arose before the scanners were transferred.

Thimbler's constructive fraudulent transfer claims consist of a mere recitation of the statutory elements as conclusory allegations, devoid of any facts or circumstances that would give rise to a plausible claim.[6] Accordingly, Thimbler has not met the requirements of Federal Rule of Civil Procedure 8(a)(2) and has failed to state a claim for constructive fraudulent transfer

---

[6] The court notes that it has not considered Unique Canada's additional argument that Thimbler has failed to state a constructive fraudulent transfer claim under N.C. Gen. Stat. § 39-23.4(a)(2) or § 39.23.5 because it has not alleged facts that give rise to a plausible inference that Unique Canada did not receive a reasonably equivalent value in return for the transfer of the scanners to Unique USA. (See Def.'s Mem. Opp'n Pl.'s Mot. for Leave to File Am. Compl., DE # 26, at 10-11.)

17

under N.C. Gen. Stat. § 39-23.4(a)(2) or § 39-23.5. See Iqbal, 556 U.S. at 678. Because Thimbler's actual and constructive fraudulent transfer claims are futile, the motion to amend the complaint will be denied with respect to the third cause of action set forth in the amended complaint.

C.  Thimbler's Motion to Conduct Jurisdictional Discovery

On 21 February 2013, Thimbler filed a motion requesting jurisdictional discovery (DE # 14) in response to Unique Canada's motion to dismiss the breach of contract claim for lack of personal jurisdiction. Although "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted," the Fourth Circuit has recognized that "district courts 'have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them].'" Carefirst of Md., Inc., 334 F.3d at 402 (second and third alterations in original) (quoting Mylan Labs., 2 F.3d at 64). Moreover, "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." Id.; see also ALS Scan, Inc., 293 F.3d at 716 n.3 (upholding a district court's denial of the opportunity to conduct jurisdictional discovery because the plaintiff "failed . . . to proffer any further facts that it could demonstrate that would be material to the . . . jurisdictional ruling" and because the plaintiff did not suggest that the jurisdictional facts asserted by the defendant in its affidavits were inaccurate); Rich v. KIS Cal., Inc., 121 F.R.D. 254, 259 (M.D.N.C. 1988) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition.").

Among other things, Thimbler seeks to conduct jurisdictional discovery regarding "the relationship agreement between [Unique Canada] and [Unique USA]," "the ownership of the Scanners," "who directed the placement of the Scanners," and "whose employees installed and maintained them." (Pl.'s Mem. Opp'n Mot. Dismiss, DE # 15, at 8.) There is no reason to believe that the additional information sought by Thimbler would alter the specific personal jurisdiction analysis with respect to Thimbler's breach of contract claim against Unique Canada. As has already been discussed, that analysis does not turn on the placement of the scanners in North Carolina, regardless of whether they were installed there by Unique Canada or by Unique USA. See discussion, supra, at 9-10. The court concludes that Thimbler's request for jurisdictional discovery would amount to nothing more than a fishing expedition. Accordingly, the motion for jurisdictional discovery will be denied.

### III. CONCLUSION

Unique Canada's motion to dismiss (DE # 11) is GRANTED, and Unique Canada is DISMISSED from this action. Thimbler's motion to amend the complaint (DE # 22) is GRANTED IN PART and DENIED IN PART. Unique USA is hereby added as a defendant to this action. The case shall proceed only on the quantum meruit claim stated against Unique USA in the second cause of action of the amended complaint. Thimbler is DIRECTED to submit to the Clerk summons for issuance to Unique USA. Because the amended complaint has already been filed at Docket Entry No. 19 and appears to be identical to the version attached to Thimbler's motion to amend the complaint at Docket Entry No. 22-1, the amended complaint need not be refiled. Thimbler's motion to conduct jurisdictional discovery (DE # 14) is DENIED. Unique Canada's motion to strike the amended complaint (DE # 21) is DENIED AS

19

MOOT.

This 11 September 2013.

_____
W. Earl Britt
Senior U.S. District Judge

20